```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| THE BANK OF NEW YORK MELLON, *AS TRUSTEE*, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | Civil Action Nos. 15-7644 (JBS/JS) |
| v. | 15-7678 (JBS/JS) |
| ACR ENERGY PARTNERS, LLC, ENERGENIC-US, LLC, DCO ENERGY, LLC, SOUTH JERSEY INDUSTRIES, INC., and REVEL ENTERTAINMENT GROUP, LLC, | **MEMORANDUM OPINION** |
| Defendants. | |
| THE BANK OF NEW YORK MELLON, *AS TRUSTEE*, | |
| Plaintiff, | |
| v. | |
| ACR ENERGY PARTNERS, LLC, and REVEL ENTERTAINMENT GROUP, LLC, | |
| Defendants. | |

**SIMANDLE, Chief Judge:**

These cases arise from the financing of construction of a central utility plant adjacent to, and separately owned from, the defunct Revel Casino and Hotel in Atlantic City. Plaintiff bondholders allege that the borrowers have defaulted upon their payment obligations and they seek replevin and foreclosure against the utility plant's owners or assignees. The defendants

removed these matters from the Superior Court of New Jersey. Removal is proper, in the present cases, only if defendants demonstrate that these replevin and foreclosure actions could have been filed originally in the federal court.[1] Defendants claim removal was proper because this court would have original jurisdiction due to "relatedness" to other cases pending in this court, because the claims arise under bankruptcy jurisdiction pursuant to 28 U.S.C. § 1334(b), and/or because the cases "relate to" a bankruptcy proceeding, namely, the Revel bankruptcy.

These matters now come before the Court by way of motions of Plaintiff the Bank of New York Mellon (hereinafter, "BNYM") to remand The Bank of New York Mellon v. ACR Energy Partners, LLC, et al., Civil Action No. 15-7644 (JBS/JS) (hereinafter, the "Replevin Action") and The Bank of New York Mellon v. ACR Energy Partners, LLC, et al., Civil Action No. 15-7678 (JBS/JS) (hereinafter, the "Foreclosure Action") pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction.  [See Docket Item 5 in 15-7644; Docket Item 2 in 15-7678.]

Because neither of these cases could have been filed within this Court's original jurisdiction, BNYM's motions to remand will be granted, and these actions will be returned to the

---

[1] See Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441(a)).

2

Superior Court of New Jersey, Atlantic County.  The Court finds as follows:[2]

1.  The Complaints in these actions concern a bevy of financial agreements, several of which have no relevance to the pending jurisdictional issue,[3] and the Court need not recite the lengthy and complex particulars of each identified agreement.  Rather, the Court will focus on the agreements and the allegations most relevant to disposition of the pending jurisdictional issue.

2.  **ACR's $118,600,000 Loan & BNYM's Security Interest**. In an effort to promote the economy of the State of New Jersey and to facilitate the construction of a central utility plant (hereinafter, "CUP") adjacent to the former Revel Casino and Hotel, the New Jersey Economic Development Authority (hereinafter, the "Authority") loaned ACR $118,600,000 through a public bond offering to various institutional investors

---

[2] For purposes of the pending motions, the Court accepts as true the facts set forth in BNYM's Verified Complaints in the Replevin and Foreclosure Actions, together with the exhibits attached to the Verified Complaints, and matters of public record.  See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).  Here, the material portions of each Verified Complaint are substantively identical, and the Verified Complaints either attach or explicitly rely upon the same governing documents.  The Court will discuss the allegations of these Verified Complaints together and will, in the interests of simplicity, primarily refer to the Verified Complaint in the early-filed Replevin action, unless otherwise indicated.

[3] These agreements specifically include a Trust Indenture, a Loan Agreement, a Note, a Mortgage, an Assignment and Security Agreement, and an Intercreditor Agreement.

3

(hereinafter, the "Bondholders"). (See Exs. B & C to the Compl. in the Replevin Action.) The Loan, in turn, required ACR to make monthly payments on the 15th day of each month.[4] (See Ex. B to the Compl. in the Replevin Action at § 2.01(b).)

  3. In order to secure its obligations, ACR then executed a Leasehold Mortgage and Security Agreement, which encumbers and constitutes a first prior lien, mortgage, and fixture filing on ACR's leasehold rights on real property adjacent to the former Revel facility, and substantially all of ACR's personal property.[5] (See Compl. in the Replevin Action at ¶¶ 14-26; Exs. C, D, & E to the Compl. in the Replevin Action.) In order to further secure these obligations, Defendant Energenic-US, LLC, the sole owner of ACR, executed a Pledge Agreement, granting the Authority and BNYM a first priority lien on and security

---

[4] At the same time, the Authority executed a Trust Indenture with BNYM, in which it assigned, transferred, and pledged all of its rights, titles, and remedies against ACR to BNYM as Trustee for the benefit of the Bondholders. (See Ex. A to the Compl. in the Replevin Action.) Practically speaking, BNYM therefore stands in the shoes of the Authority and Bondholders for purposes of prosecuting ACR's alleged contractual breaches.

[5] The Assignment and Security Agreement specifically defines this personal property to include ACR's documents, general intangibles, goods, insurance, intellectual property, investment related property, letter of credit rights and letters of credit, money, receivables and receivable records, commercial tort claims, all other personal property, and any proceeds, products, accessions, rents, and/or profits of or in respect of any of these categories. (See Ex. D to the Compl. in the Replevin Action at §§ 2(a)(1)-(a)(12).)

interest in 100% of its interest in ACR.[6]  (See Compl. in the Replevin Action at ¶¶ 27-31; Ex. E to the Compl. in the Replevin Action.)  In other words, ACR effectively pledged all of its property, regardless of form, to the Authority and BNYM in order to secure the $118,600,000 in financing.

    4.  **ACR's Default**.  Beginning in June 2014, ACR stopped meeting its obligation to make monthly installment payment of $1,153,000, and to contribute to a reserve account established to pay down the debt service.  (See Ex. K to the Compl. in the Replevin Action.)  As a result, BNYM sent ACR various notice of defaults, and subsequently accelerated the loan and declared the outstanding principal and interest immediately due and owing. (See Exs. L, M, & N to the Compl. in the Replevin Action.)  As of August 1, 2015, the combined principal and accrued interest has ballooned to no less than $135,431,958.79, and ACR has, at this point, purportedly defaulted on all of its contractual obligations.  (See Compl. in the Replevin Action at ¶¶ 57-64.)

    5.  **State Court Foreclosure Actions**.  Following ACR's default, BNYM filed companion state court actions, seeking to foreclose ACR's interests in its real and personal property, and to replevy and take possession of those interests.  (See

---

[6] The parties, together with Revel Entertainment Group, LLC, then separately entered into an Intercreditor Agreement, which essentially clarified that BNYM's lien against ACR's property took priority over any rights granted to Revel Entertainment Group, LLC.  (See Ex. F to the Compl. in the Replevin Action.)

<u>generally</u> Compl. in the Replevin Action; Compl. in the Foreclosure Action.)  Following initial injunctive motion practice before the state court,[7] ACR removed these actions to this federal Court, and the pending motions to remand followed.[8]

---

[7] October 1, 2015, the state court entered an Order to Show Cause and Temporary Restraining Order (hereinafter, "TRO") in the Replevin Action that: (a) directed ACR to show cause why a Writ of Replevin should not issue directing the Sheriff to seize and deliver ACR's pledged personal property interests to BNYM; (b) restrained ACR and its affiliates from interfering with these interests; (c) directed ACR to deposit all proceeds relative to these interests; (d) provided BNYM with the right to an account of the Collateral and Pledged Interests (including a right to inspect and appraise the same); and (e) directed ACR to comply with the obligations of the Stipulated Order entered in <u>ACR Energy Partners, LLC v. Polo North Country Club, Inc.</u>, Civil Action No. 15-2677 (JBS/JS).  Then, on October 9, 2015, October 1, 2015, the state court entered a TRO in the Foreclosure Action that granted substantially similar relief, and specifically: (a) directed ACR to show cause why a receiver should not be appointed to oversee BNYM's interest in ACR's real property; (b) restrained ACR and its affiliates from interfering with, or otherwise disposing of, the real property; (c) directed ACR to deposit certain cash proceeds relative to the real property into an escrow account; (d) granted BNYM the right to inspect ACR's books and records relative to the real property; and (e) again directed ACR to comply with the obligations of the Stipulated Order entered in <u>ACR Energy Partners, LLC v. Polo North Country Club, Inc.</u>, Civil Action No. 15-2677 (JBS/JS).  On the eve of the state court return date for the TRO, ACR removed these actions to this federal Court.  Following a hearing upon the TROs, the Court entered an Order extending the state court TROs until November 13, 2015, in order to maintain the status quo during the pendency of the present jurisdictional challenge. [<u>See, e.g.</u>, Docket Item 7 in the Replevin Action.]

[8] On October 29, 2015 and November 2, 2015, ACR moved to dismiss the Replevin and Foreclosure actions pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join an indispensable party. [<u>See</u> Docket Item 11 in 15-7644; Docket Item 6 in 15-7678.] Because the Court will remand these actions for the reasons stated below, ACR's motions to dismiss will be dismissed

6. In seeking to remand these actions for lack of subject matter jurisdiction, BNYM takes the position that they present quintessential state court actions—one for replevin and foreclosure of collateral comprised of personal property, and the other for foreclosure of ACR's mortgaged leasehold interest. (See BNYM's Br. at 1-2, 9-17.)  In that way, BNYM argues that these actions amount to little more than a secured creditor seeking to take back its pledged collateral, and involve questions routinely reserved for state courts.  (See id. at 9-10.)  BNYM therefore submits that these actions have no place in this federal Court, because they neither involve federal law, nor "arise under" and/or "relate to" the Bankruptcy Code and the Revel bankruptcy.  (Id. at 9-17.)

7.  ACR, by contrast, takes the position that this Court may exercise "ancillary" jurisdiction of these actions by virtue of the Stipulated Order entered in ACR Energy Partners, LLC v. Polo North Country Club, Inc., Civil Action No. 15-2677 (JBS/JS) and these actions alleged relation to matters pending before this Court and other Courts within this District.  (See ACR's Opp'n at 13-19.)  In the alternative, ACR argues that jurisdiction properly lies in this federal Court to the extent these actions allegedly involve the interpretation of the

---

as moot, without prejudice to ACR's right to renew its arguments before the state court.

possessory rights ACR elected to retain under 11 U.S.C. § 365(h) (hereinafter, "Section 365(h)") in connection with the Revel bankruptcy proceeding, and therefore "arise under" and/or "relate to" the Bankruptcy Code.[9] (Id. at 21-21.) The Court will address each basis in turn.

8. It is well settled that "[o]nly state-court actions that originally could have been filed in federal court" may properly be removed. Caterpillar, 482 U.S. at 392 (1987) (citing 28 U.S.C. § 1441(a)). Indeed, 28 U.S.C. § 1441(a) expressly provides that, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing" the pending action. 28 U.S.C. § 1441(a).

---

[9] In its Notice of Removal, ACR claimed that these actions satisfied the requirements for diversity jurisdiction under 28 U.S.C. §§ 1441(b), 1332. [See Docket Item 1 in the Replevin Action at ¶ 12; Docket Item 1 in the Foreclosure Action at ¶ 12.] ACR, however, no longer advances that position in connection with its pending briefing. (See generally ACR's Opp'n.) Nevertheless, the Court notes that, because ACR identifies itself as a citizen of New Jersey, its removal plainly contravenes the forum-defendant rule, and therefore defeats any basis for diversity jurisdiction. See 28 U.S.C. § 1441(b)(2) (provides that a "civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title [28 U.S.C. § 1332(a)] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought").

9.   As the removing party, ACR bears the burden of demonstrating removal jurisdiction, Samuel-Basset v. KIA Motors Am. Inc., 357 F.3d 392, 396 (3d Cir. 2004), against the backdrop that removal statutes are to be strictly construed against removal, with any doubt resolved in favor of remand.[10]  See, e.g., Brown v. Jevic, 575 F.3d 322, 326 (3d Cir. 2009); Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990).

10.   **Relatedness Jurisdiction**.  The Court addresses, at the outset, ACR's position that the alleged relation of this action to other actions pending before this Court, Polo North Country Club, Inc. v. ACR Energy Partners, LLC, Civil Action No. 15-5324 (JBS/JS), ACR Energy Partners, LLC v. Polo North Country Club, Inc., Civil Action No. 15-2677 (JBS/JS), and Rosemawr Municipal Partners Fund LP v. ACR Energy Partners, LLC, Civil Action No. 15-6903 (RBK/AMD), provides an independent basis for subject matter jurisdiction.  (See ACR's Opp'n at 13-19.)  Rejecting this argument, however, requires no complex inquiry, because the standard for subject matter jurisdiction does not turn upon alleged factual relation to separate civil actions.  Even more, these other actions present a distinct constellation of issues, involving primarily different parties, and each presents, unlike

---

[10] For that reason, 28 U.S.C. § 1447(c) states, in relevant part, that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

9

here, an <u>independent</u> basis to exercise subject matter jurisdiction.[11]

    11.  Nor does the Court's Stipulated Order in <u>ACR Energy Partners, LLC v. Polo North Country Club, Inc.</u>, Civil Action No. 15-2677 (JBS/JS), require retention of the Replevin and Foreclosure actions, in order to vindicate this Court's authority relative to the Stipulated Order. (<u>See</u> ACR's Opp'n at 17-18.) Rather, in the event BNYM successfully forecloses upon the pledged collateral, it will be bound by the Stipulated Order to the same extent as ACR. Indeed, the TROs entered by the state court acknowledged the Stipulated Order, as they must, and directed ACR to comply with the obligations of the Stipulated Order. For that reason, these actions do not inhibit the Stipulated Order,[12] nor does the existence of the Stipulated

---

[11] In its Notice of Removal, ACR relatedly stated that New Jersey's "entire controversy doctrine creates bases for this Court to assert [<u>federal</u>] jurisdiction over [BNYM's] causes of action." [Docket Item 1 in the Replevin Action at ¶ 17.] New Jersey's entire controversy doctrine, however, constitutes an affirmative defense, not a basis for federal subject matter jurisdiction. <u>See, e.g.</u>, <u>Port Drivers Fed'n 18, Inc. v. Fortunato</u>, No. 12-5749, 2013 WL 1314630 (D.N.J. Mar. 28, 2013) (remanding case to state court for lack of jurisdiction, over defendant's argument under New Jersey's entire controversy doctrine).

[12] Moreover, even if having these actions proceed in state court might have some incidental impact on the Stipulated Order, the exercise of subject matter jurisdiction would be discretionary, and the Court declines to exercise its discretion in this instance. <u>See</u> <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 379 (1994) (describing this discretionary form of ancillary jurisdiction); <u>Pfizer Inc. v. Uprichard</u>, 422 F.3d 124,

10

Order in another action otherwise permit this Court to exercise subject matter jurisdiction over these legally and factually distinct matters.

12. **"Arising Under" Jurisdiction**. 28 U.S.C. § 1452(a) provides that "[a] party may remove any claim or cause of action in a civil action . . . if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). 28 U.S.C. § 1334(b), in turn, provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings <u>arising under</u> title 11..." 28 U.S.C. § 1334(b) (emphasis added). A case "aris[es] under" the Bankruptcy Code within the meaning of § 1334(b), if the Bankruptcy Code creates the cause of action or provides the substantive right invoked, <u>see</u> <u>Stoe v. Flaherty</u>, 436 F.3d 209, 216-17 (3d Cir. 2006) (citation omitted) (noting that "[b]ankruptcy 'arising under' jurisdiction is analogous to the narrower statutory 'arising under' federal question jurisdiction of 28 U.S.C. § 1331"), or if the proceeding itself has essentially "'no existence outside of the bankruptcy.'" <u>Id.</u> (citation omitted).

13. In an effort to identify a substantive bankruptcy issue here, ACR submits that its election of possessory rights

---

131 (3d Cir. 2005); <u>Sandlin v. Corp. Interiors, Inc.</u>, 972 F.2d 1212, 1216 (10th Cir. 1992).

under section 365(h) forms the fabric of these actions, thereby inextricably tethering these actions to the Bankruptcy Code. (ACR's Opp'n at 20-28.)  Nevertheless, ACR's argument fundamentally mischaracterizes the nature of BNYM's entire state law based claims, none of which attempt to invoke substantive rights provided by the Bankruptcy Code, nor otherwise arise out of bankruptcy proceedings.  Rather, BNYM seeks little more than to foreclose on collateral, enforce promissory notes, and obtain judgments of possession and/or the appointment of a receiver. Section 365(h), however, had no part in the creation of these asserted entitlements.[13]  Indeed, ACR's section 365(h) rights relative to its leasehold interests arose only recently, while BNYM's claimed rights arose as a matter of contract years prior to the Revel bankruptcy proceeding and in connection with agreements pertaining to ACR's financing that have never been implicated by the Revel bankruptcy proceeding.

    14.  In that way, resolution of these claims requires little more than the interpretation of interdependent private contracts and the application of state foreclosure principles, issues of the sort that arise, without question, under state

---

[13] For that reason, the Court rejects ACR's reliance for jurisdictional purposes upon IDEA Boardwalk, LLC v. Revel Entertainment Group, LLC, 532 B.R. 216 (Bankr. D.N.J. 2015), a case that concerned the very existence of a former Revel tenant's section 365(h) rights.

law.[14]  See Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 474 (1989) ("the interpretation of private contracts is ordinarily a question of state law"); Pocopson Indus., Inc. v. Hudson United Bank, No. 05-6173, 2006 WL 2092578, at *8 (E.D. Pa. July 26, 2006) ("State law customarily governs the field of contracts") (citation omitted).  For all of these reasons, the Court concludes that these actions do not "arise under" the Bankruptcy Code.  See Susquehanna Commercial Fin., Inc. v. Herdocia, No. 06-5125, 2007 WL 137837, at *3 (E.D. Pa. Jan. 16, 2007) (reject state law breach of contract claims as a basis for "arising under" jurisdiction).

    15.  **"Related To" Jurisdiction**.  A civil proceeding "relate[s] to" a bankruptcy proceeding, if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."  Pacor, 743 F.2d at 994.  As relevant here, in relation to post-confirmation disputes,

---

[14] The nature of BNYM's remaining claims, all of which sound in contract or principles of equity, compel no contrary result. (See ACR's Opp'n at 28 (arguing that BNYM's motions to remand ignore "the bulk of its causes of action when addressing this Court's subject matter jurisdiction).) Indeed, because BNYM's various claims nowhere rest upon ACR's section 365(h) election, the Court perceives no basis for ACR's position that these claims would necessarily require the Court to "fully consider" section 365(h). Rather, the contours of ACR's section 365(h) rights will be resolved in other actions, not this one, and this matter does not become a federal case simply because BNYM may, at some point, become bound by the section 365(h) determinations of this Court (or some other fora).

13

"related-to" jurisdiction will exist only if the claim "affect[s] an integral aspect of the bankruptcy process," meaning that a "close nexus" exists between "the bankruptcy plan" and the proposed proceeding. Binder v. Price Waterhouse & Co., 372 F.3d 154, 167 (3d Cir. 2004). In other words, the action must affect the "interpretation, implementation, consummation, execution, or administration of the confirmed plan." In re Resorts Int'l, 372 F.3d 154, 167 (3d Cir. 2004).

16. In support of exercising "related to" jurisdiction here, ACR submits that BNYM's claims directly impact property of the Revel Debtor's estate and/or are otherwise modified by Bankruptcy Court decisions related to disputes over the Revel Debtor's estate. (See ACR's Opp'n at 29-31.) The Court rejects this proposition because the Bankruptcy Court deemed the Revel Bankruptcy "fully administered and closed" on August 10, 2015, well before the state court Complaints in these actions, and neither BNYM nor ACR hold property that ever belonged to the Revel estate. Even more critically, because these actions do not turn, even tangentially, upon ACR's section 365(h) rights, they will not require any interpretation of Bankruptcy Court decisions, nor any consummation or administration of the confirmed Revel plan. As a result, the Court perceives no meaningful nexus between these actions and the closed Revel proceedings, and concludes that these actions do not "relate to"

14

the Bankruptcy Code.  See Faltas-Fouad v. St. Mary's Hosp., Passaic, N.J., Nos. 14-5228 & 14-6021, 2015 WL 260907, at *3 (D.N.J. Jan. 20, 2015) (posting no basis for post-confirmation "related to" jurisdiction); Prudential Ins. Co. of Am. v. UBS Real Estate Sec., No. 13-2953, 2014 WL 202762, at *4-*5 (D.N.J. Jan. 16, 2014) (finding the mere potential of relation to a bankruptcy proceeding insufficient, and remanding the case to state court).

17.  The impropriety of removal of the Foreclosure and Replevin actions against the ACR defendants stands in contrast to the Court's finding in another case in which the Court found ACR's removal proper, see Polo North Country Club, Inc. v. ACR Energy Partners, LLC, Civil Action No. 15-5324 (JBS/JS) (D.N.J. Nov. 5, 2015).  In the latter case, the dispute between ACR and the purchaser of the Revel property through the Bankruptcy Court's sale turns upon determination of ACR's possessory interests under 11 U.S.C. § 365(h); thus, this Court (or the Bankruptcy Court) must address the effect of ACR's section 365(h) election in the context of the bankruptcy sale under 11 U.S.C. § 363.  Id., slip op. at 12-16.  Such a dispute lies within the jurisdiction of this Court because it arises under federal law (28 U.S.C. § 1331) and because it arises under the Bankruptcy Code (28 U.S.C. § 1334(b)), where ACR's section 365(h) rights are at issue solely by virtue of the Revel

15

bankruptcy proceedings.  Id. at 15 (citing United States Trustee v. Gryphon at the Stone Mansion, Inc., 166 F.3d 552, 556 (3d Cir. 1999) and IDEA Boardwalk, LLC v. Revel Entertainment Group, LLC, 532 B.R. 216, 223 (Bankr. D.N.J. 2015)).  In the present Foreclosure and Replevin actions, on the other hand, the rights at issue arose under the parties' various private contractual and financial documents which can hardly be described as having arisen from the Bankruptcy Code or the Bankruptcy Court's orders in the Revel proceedings.

18. For all of these reasons, BNYM's motions to remand will be granted, and these actions will be remanded to the Superior Court of New Jersey, Atlantic County, for lack of subject matter jurisdiction.

19. An accompanying Order will be entered.

 **November 5, 2015**                         **s/ Jerome B. Simandle**
Date                                           JEROME B. SIMANDLE
                                               Chief U.S. District Judge